UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 CR 619-2-3 |
| vs. ) | Judge Der-Yeghiayan |
| ) | |
| MANNY AGUJA, MARC AGUJA, *et al.*, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT MANNY AGUJA'S
### SENTENCING POSITION PAPER

Defendant Manny Aguja, by and through his attorney, respectfully submits this Sentencing Position Paper. Defendants Marc and Manny Aguja submitted a joint Version of the Offense on July 27, 2011, and incorporate that document herein. Sentencing for both men is set for November 30, 2011.

Manny agrees with the facts as set forth in the plea agreement and the PSR. Defendant also agrees with the sentencing calculations put forward by the Probation Officer. As noted in the PSR, defendant has accepted responsibility for his actions and admitted his involvement in the scheme. Manny has led an exemplary life up to now; he has worked hard and has not had an easy life, he is steeped in religion, lives modestly and, above all, strives to help others. He has no prior criminal history. Unfortunately, Manny made mistakes in a misguided effort to help others.

### Agreed Guideline Calculations

The parties agree and both the Plea and the PSR reflect the following guideline calculations for Manny Aguja:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2L2.1(a) | 11 |
| Specific Offense Characteristic, Offense Involving At Least 12 Documents, U.S.S.G. § 2L1.2(b)(2)(A) | 3 |
| Adjustment for Abuse of Trust/Use of Special Skill, U.S.S.G. § 3B1.3 | 2 |
| Adjusted Offense Level | 16 |
| Acceptance of Responsibility | (2) |
| Total Offense Level | 14 |

Manny's Criminal History Category is 1. The resulting advisory guidelines range is 15-21 months imprisonment.

## 18 U.S.C. § 3553(a) Factors

As the Court is aware, 18 U.S.C. § 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. The statute directs consideration of a number of factors, including **"the nature and circumstances of the offense and the history and characteristics of the defendant;"** deterrence (specific and general); the need for the public to be protected from the defendant; the sentencing guidelines; unwarranted disparity considerations; and the need for restitution.

The sentencing guidelines, of course, are advisory. *United States v. Booker*, 543 U.S. 220 (2005) (Breyer, J. opinion). This Court is not permitted to presume correctness of the guidelines range. *Nelson v. United States*, 555 U.S. 350, 129 S.Ct. 890, 891 (2009) (*per curiam*); *Gall v. United States*, 552 U.S. 38, 50 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007). As the Seventh Circuit has stated, "[T]he sentencing judge may

not rest on the guidelines alone, but must, if asked by either party, consider whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors." *United States v. Dean*, 414 F.3d 725, 730-31 (7th Cir. 2005). This Court must clearly articulate the reasons for a sentence. See *Rita*, 551 U.S. at 357-58; see also *United States v. Panaigua-Verdugo,* 537 F.3d 722, 727 (7th Cir. 2008).

### A Below-Guideline Sentence is Warranted

A careful, individualized assessment of this case and Manny Aguja strongly militates towards a finding that a below-guideline sentence is "sufficient but not greater than necessary" to comply with all of the various sentencing considerations.

Manny grew up in poverty in the Philippines. His mother died when he was only 8 months old and his father died when he was in his teens. His sister, Servita Aguja-Aguilar, explains that growing up, Marc and Manny were inseparable.[1] And they remain inseparable to this day – they are two sides of one coin. They have an unusually close relationship and are deeply, emotionally linked. Any separation – even for a brief period – would cause great anguish to both Marc and Manny.

Manny worked extremely hard to get his education and then helped other family members complete educations as well.[2] Manny grew up knowing that sharing and helping others was very important and has always done all he could to contribute, either time or money, to those in need.

Manny is aware of the seriousness of his offenses and has discussed his actions with his relatives who are ICE Agents. Manny's friend and fellow attorney, Hope Fatima

---

[1] Letter of Servita Aguja-Aguilar
[2] *Id.*

3

Mercado, writes about how the indictment has depressed and isolated Manny.[3] Retired Cook County Judge David Delgado, explains that Manny is a man "who has been sentenced one thousand times since the day the authorities placed handcuffs on his wrist and charged him with criminal offenses...[he] feels the pain of what has been lost."[4] Manny's brother, Lino, writes: "I firmly believe that [Marc and Manny] have completely understood the consequences of their actions and with great humility, repentance and regrets have accepted their faith and are putting their future at the mercy of your [H]onorable [C]ourt."[5] As a consequence of his crimes Manny has lost his reputation in the community and among his peers – he has been shunned and ostracized. Manny has been inconsolable during his meetings with counsel. This is severe punishment for this man who has been so well known, respected and liked for so long.

Manny is a pillar of the Filipino-American community and has spent numerous hours volunteering in that community. "It is hard to find a civic organization that has not been touched by Manny in some capacity, being legal or financially. That is in line with Manny's character of eagerness to share and serve."[6] Manny is a member of Transformation of Our Lord Parish and attends mass daily. Rev. Fr. Alfredo Salera writes about Manny's volunteer work at church and his regular attendance at Mass.[7] Rev. Fr. John Rudnik writes that Manny is a "big help in our Church as lector and cantor, in

---

[3] Letter of Hope Fatima Mercado
[4] Letter of David Delgado
[5] Letter of Lino A. Aguja
[6] Letter of David Delgado
[7] Letter of Rev. Fr. Alfredo Salera

bringing Holy Communion to the sick, fundraising for our poor parish and other worldly causes."[8]

Manny found it impossible to turn someone away who needed his help. Many times, he did *pro bono* work, other times, he charged little more than the filing fee. Josefina Samson was recently reunited with her husband and three children thanks to Manny, and explains that Manny allowed her (and all his clients) to pay what they could afford, a little at a time.[9] Manny helped many people including an unemployed Iraq war veteran for no charge.[10] Manny helped another woman with her divorce and told her to "just pay me back whenever you can."[11] He is generous with others, like his client and friend, Rose Padilla, who received *pro bono* legal services. When Rose fell behind on her bills, Manny helped her.[12] He also didn't hesitate to help pay for a friend's education. Tristan Talua calls Manny "selfless" in her story of how Marc and Manny paid for her schooling. She writes that the brothers paid for her education while asking nothing in return.[13] Manny's brother, Lino, explains that it is due to his values that Manny "stray[ed] from the right path."[14]

In order for Manny to get his law degree, he worked at night and attended law school during the day. The achievement of a law degree and receiving his license has given him a sense of pride. By virtue of this case, Manny is surrendering his license to practice law in Illinois and his license to practice in Immigration Court. While to any attorney, it would be devastating to lose their license, it is more so to Manny Aguja.

---

[8] Letter of Rev. Fr. John Rudnik
[9] Letter of Josefina Samson
[10] Letter of Elenita Balacy
[11] Letter of Sara Senarillos
[12] Letter of Rose Padilla
[13] Letter of Tristan Talua
[14] Letter of Lino A. Aguja

5

Here, he will not only lose his license, but also his position in the community. At the same time, Manny does not minimize the things he has done and does not suggest that he should be allowed to keep his license.

Manny will not reoffend. Going forward, Manny will continue to treat people with compassion and respect, but is and will be mindful of his past mistakes. After the pain and embarrassment he has caused himself and others, Manny will not make the same mistakes.

A sentence below the guidelines would be adequate punishment in this case to insure Manny will not reoffend. Studies show that a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who had already served serious time, yet continues to reoffend. See *Untied States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).

We respectfully request that this Court exercise its discretion and give a downward variance from the guidelines in this case. The result of this exercise of discretion would still be "sufficient" to punish Manny and deter him from committing crimes in the future.

## Conclusion

Manny is a good, religious, hard-working person who was not born with a silver spoon in his mouth. He regrets the mistakes he made. Manny wanted to help others to realize the American Dream, and tried to ease the suffering of others. Due to his actions, he has suffered himself. He accepts that he will be punished, but his lifetime of good works, service and lack of prior criminal acts warrants a below guidelines sentence.

                                      Respectfully Submitted,

                                      /s/ Edward M. Genson

EDWARD M. GENSON  
GENSON & GILLESPIE  
53 W. Jackson Blvd., Suite 1420  
Chicago, IL 60604  
(312) 726-9015

## **CERTIFICATE OF SERVICE**

I, EDWARD M. GENSON, an attorney for Defendant Manny Aguja, hereby certify that on this, the 23rd day of November, 2011, I filed the above-described document on the CM/ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

/s/ Edward M. Genson

EDWARD M. GENSON
GENSON & GILLESPIE
53 W. Jackson Blvd., Suite 1420
Chicago, IL 60604
(312) 726-9015